USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/10/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

JULIA CAMPBELL, *as mother and natural guardian of infant A.C.*,

                               Plaintiff,

              -v-

CITY OF NEW YORK et al.,

                               Defendants.

------------------------------------------------------------- X

15 Civ. 2088 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Julia Campbell ("Campbell"), acting as legal guardian of infant plaintiff A.C., filed this suit against the City of New York and individual police officers, alleging that A.C.'s civil rights were violated when he was assaulted and erroneously arrested by the city officers. Following a mediation session, the parties reached an agreement to settle for, *inter alia*, $50,000, inclusive of costs and attorneys' fees. Under the proposed settlement, one-third of the settlement award, less costs and satisfaction of a lien, will be paid to plaintiff's counsel as his fee. The remaining $29,733.84 will be deposited into a bank account for the benefit of A.C.

After reviewing the proposed settlement, as well as the submissions by Campbell and plaintiff's counsel in support of the settlement, the Court concludes that the settlement is fair, reasonable, and in the best interests of the infant. Accordingly, the Court grants Campbell's motion to approve the proposed infant compromise order.

**I.    Background**

On March 19, 2015, Campbell filed this action on behalf of her son, A.C., against the City of New York, as well as officer Ramon Rodriguez, Lieutenant Louis Barbarelli, and Captain

Julio Delgado of the New York Police Department. Dkt. 1. On August 4, 2015, Campbell filed an amended complaint, alleging violations of A.C.'s constitutional rights under 42 U.S.C. §§ 1983, 1988, as well as violations of New York laws and the New York State Constitution. Dkt. 6 (First Amended Complaint) ("FAC").

In the FAC, Campbell alleges that, on December 21, 2013, A.C., then age 15, was lawfully present at a memorial gathering in Bronx, New York, when a defendant officer unjustifiably chased after A.C. and proceeded to knock him down and kick him in the face, head, and body. FAC ¶¶ 15–18. A.C., who sustained bruising and swelling, a fractured tooth, and other injuries to his face, ears, eyes, and mouth, was later arrested on reckless endangerment charges and taken to the 48th Precinct. *Id.* ¶¶ 19–20. After spending several hours in custody, A.C. was released from the precinct and admitted to Saint Barnabas Hospital for treatment. *Id.* ¶¶ 22–23. The charges against A.C. were ultimately discontinued after A.C. appeared in family court. Dkt. 20, Ex. 2 (Declaration of Gabriel P. Harvis in Support of Infant Compromise Regarding Claims of A.C.) ("Harvis Decl.") ¶ 3.

Campbell retained the firm of Harvis & Fett to represent A.C. The retainer agreement called for Harvis to receive a contingent fee of one-third of the value of any settlement. Dkt. 22 (Letter from Gabriel P. Harvis) ("Harvis Letter"). (It also recited Gabriel P. Harvis's ("Harvis") hourly rate as $425, *id.*, although the Court is skeptical that the parties expected Campbell or A.C. to pay the firm for Harvis's work, let alone at that rate, in the event no settlement or trial award were achieved.) On October 1, 2015, following document discovery and an exchange of initial disclosures, *see* Harvis Decl. ¶ 13; Dkt. 22, Ex. 1, at 1–4, the parties attended a mediation session in accordance with Local Civil Rule 83.10, Harvis Decl. ¶ 4. At the mediation session, the parties negotiated a proposed settlement, pursuant to which defendants agreed to pay a total

2

of $50,000 to settle all of A.C.'s claims. Dkt. 20, Ex. 5 (Proposed Infant Compromise Order) ("Proposed Order"). The proposed settlement provides for the $50,000 to be distributed as follows: (1) $3,090 in satisfaction of a lien held by a law firm unaffiliated with Harvis for legal services rendered in connection with the representation of A.C. in the immediate aftermath of his arrest; (2) $779.24 in advanced costs; (3) $16,406.92 in attorneys' fees, amounting to one-third of the settlement amount, less costs; and (4) a balance of $29,733.84 to be paid into a bank account held by Campbell for the exclusive use and benefit of A.C. until A.C. achieves his 18th birthday. Proposed Order ¶¶ 2–10; Harvis Decl. ¶ 5.

On October 29, 2015, Campbell filed a motion seeking approval of the Proposed Order. Dkt. 20. As required by New York C.P.L.R. § 1208, Campbell submitted an affidavit in support of the Proposed Order. Dkt. 20, Ex. 1 ("Campbell Aff."). Harvis submitted a declaration explaining the terms of the infant compromise order, and stating why the proposed settlement is fair and reasonable. Harvis Decl. Harvis states that he recommended that Campbell accept $50,000 in full satisfaction of A.C.'s claims because he found that sum "fair and reasonable" given A.C.'s injuries, as well as the risks and expenses of litigation. *Id*. ¶¶ 6–10. Harvis also submitted (1) an itemized statement of the legal costs advanced to A.C., Dkt. 20, Ex. 3; (2) a letter from A.C.'s family court attorney evidencing the lien on A.C.'s assets, Dkt. 20, Ex. 4; and (3) an invoice reflecting the number of hours Harvis spent on this matter, the nature of his work, and a proposed hourly rate of $400, Dkt. 22, Ex. 1 ("Invoice").

## II. Discussion

Local Civil Rule 83.2(a)(1) requires parties to obtain court approval before settling an action by or on behalf of a minor. In determining whether an infant compromise should be approved, the reviewing court "shall conform, as nearly as may be, to the New York State

statutes and rules." Local Civil R. 83.2(a)(1).  In accordance with the applicable New York statutes and rules, courts in this jurisdiction focus on "whether (1) the proposed settlement is in the infant's best interests; and (2) the proposed attorney's fees and costs are reasonable." *D.J. ex rel. Roberts v. City of New York*, No. 11 Civ. 5458 (JGK) (DF), 2012 WL 5431034, at *2 (S.D.N.Y. Oct. 16, 2012), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (citing Local Civil R. 83.2(a); N.Y. Jud. Law § 474; N.Y. C.P.L.R. §§ 1205–1208).

    A.    **Fairness of the Total Settlement Award**

        1.    **Applicable Legal Standards**

There is no "bright-line test" for determining whether a proposed settlement is in the infant's best interest. *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (explaining "delica[cy]" of court's multifactorial analysis as to whether settlement is appropriate)).  Rather, the Court must assess whether the proposed settlement is "fair, reasonable, and adequate by comparing the terms of the compromise with the likely rewards of litigation." *Everett v. Bazilme*, No. 06 Civ. 0369 (SJ) (JO), 2007 WL 1876591, at *2 (E.D.N.Y. June 28, 2007) (quoting *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999)) (internal quotation marks omitted).  There is a strong presumption that a settlement is fair and reasonable where "(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." *Orlandi ex rel. Colon v. Navistar Leasing Co.*, No. 09 Civ. 4855 (THK), 2011 WL 3874870, at *2 (S.D.N.Y. Sept. 2, 2011) (quoting *Ross v. A.H. Robins Co., Inc.*, 700 F. Supp. 682, 683 (S.D.N.Y.1988)).  Other factors to consider include "the complexity, expense, and likely duration of litigation . . .

4

[and] the risks of establishing both liability and damages." *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (internal citations omitted). Finally, courts afford "significant deference" to a guardian's view that the settlement reached is fair and reasonable to the infant plaintiff. *Orlandi*, 2011 WL 3874870, at *2; *see also Stephen v. Target Corp.*, No. 08 Civ. 338 (CPS) (JG), 2009 WL 367623, at *3 (E.D.N.Y. Feb. 12, 2009) (adopting report and recommendation); *Stahl v. Rhee*, 643 N.Y.S.2d 148, 153 (2d Dep't 1996) (noting that "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

### 2. Analysis

Viewing the proposed infant compromise in light of these familiar standards, the Court finds it fair, reasonable, and in A.C.'s best interests. First, there is no evidence of collusion in this case. Rather, Harvis represents that (1) the settlement was reached only after arm's-length bargaining with the defendants, (2) he does not represent any other parties to this litigation, and (3) he has not received any compensation from defendants or their attorneys or representatives. Harvis Decl. ¶¶ 4, 11, 12; *see* N.Y. C.P.L.R. §1208(b) (requiring that such affirmations be included in an infant's attorney's submission in support of a proposed infant compromise order).

Second, plaintiff's counsel has significant experience with civil rights matters. Harvis has been practicing civil rights law since 2006. Harvis Decl. ¶ 10. He began his career at the New York City Law Department, where he defended the City of New York and individual defendants in numerous § 1983 actions. *See Shebazz v. City of New York, et al.*, No. 14 Civ. 6417 (GHW), Dkt. 43, ¶¶ 4–8. Subsequently, he founded a private firm that specializes in § 1983 cases, through which he states that he has brought "hundreds of such actions in the Southern and Eastern Districts of New York, the vast majority of which involve claims of false arrest, excessive force and/or malicious prosecution." *Id.* ¶ 10.

5

Third, the Court is satisfied that sufficient discovery was conducted to enable an intelligent analysis of the issues and proposed settlement. Harvis's Declaration and Invoice indicate that, before the mediation session, he investigated A.C.'s allegations, conducted document discovery, exchanged disclosures with defendants, and received and reviewed A.C.'s medical records. *See* Harvis Decl. ¶ 13; Invoice; *see also Jurdine ex rel. Jurdine v. City of New York*, No. 07 Civ. 2915 (CBA) (JO), 2008 WL 974650, at *3 (E.D.N.Y. Apr. 8, 2008) (holding that an "exchange of written discovery and counsel's investigation into the circumstances surrounding the alleged unlawful arrest and detention were sufficient to enable an intelligent analysis of the issues and the proposed settlement") (adopting report and recommendation).

Fourth, the Court finds that the terms of the compromise are adequate in light of the risks, expenses, and likely rewards of litigation. The parties propose to settle the matter for $50,000, with a net total of $29,733.84 being placed in an interest-yielding bank account for the sole use and benefit of A.C. Proposed Order ¶¶ 2, 4, 5. Harvis rationally opines that this sum is reasonable because A.C.'s "physical injuries, though not inconsequential, are not ongoing or life-threatening," and A.C. "was not subjected to an extended deprivation of his liberty." Harvis Decl. ¶¶ 7, 10. Further, he notes, the costs of litigation could well have significantly diminished any award A.C. would have recovered had he proceeded to trial and won. *See id.* ¶ 9 (noting anticipated costs of protracted litigation). Harvis is also correct that A.C. faced material litigation risks, because "defendants stridently dispute[d] A.C.'s account and [had] viable alternate theories to explain A.C.'s injuries." *Id.* ¶ 8; *see Vitucci v. Winthrop Univ. Hosp.*, No. 12 Civ. 4328 (DRH) (GRB), 2014 WL 4659274, at *3 (E.D.N.Y. Sept. 17, 2014) (finding proposed settlement reasonable where risks of litigation were great and where establishing defendants' liability and damages from plaintiff's non-permanent injury presented challenges)

(adopting report and recommendation). Accordingly, Harvis reasonably notes, "[t]he settlement ensures that plaintiff will receive compensation and not have to deal with the uncertainties of protracted litigation . . . and allows A.C. to avoid a deposition himself, which, given his age, could be an ordeal." *Id.* ¶ 9; *see Orlander v. McKnight*, No. 12 Civ. 4745 (HBP), 2013 WL 4400537, at *5 (S.D.N.Y. Aug. 15, 2013) (noting that trial would have "potential for trauma" for the infant plaintiffs); *C.A. ex rel. Arroyo v. City of New York*, No. 11 Civ. 3831 (LB), 2013 WL 764626, at *2 (E.D.N.Y. Feb. 28, 2013) (noting that settling the infant's case would "avoid the costs of full discovery and litigation as well as the uncertainty of plaintiff's ability to prevail on her claims and prove her damages").

Notably, similar cases have settled for significantly less money. *See, e.g.*, *Baez v. City of New York*, No. 09 Civ. 2635 (RRM) (JO), 2010 WL 1992537 (E.D.N.Y. Apr. 21, 2010), *report and recommendation adopted*, 2010 WL 1991521 (E.D.N.Y. May 17, 2010) (finding infant compromise of $15,000 reasonable where plaintiff alleged that defendants violated his constitutional rights, as well as his rights against false arrest and false imprisonment under New York law, when defendants tackled and beat plaintiff, arrested him without probable cause, and improperly charged him with robbery). Finally, Campbell's view that the proposed settlement is fair for her son merits a degree of deference. *See* Campbell Aff. ¶ 2. These factors, in combination, support the settlement sum.

With regard to the disposition of the settlement proceeds, the Proposed Order specifies that the settlement proceeds allocated to A.C. are to be made to the order of Julia Campbell, as custodian for A.C., and deposited in an account at Banco Popular, located at 1046 Southern Boulevard, Bronx, New York. Proposed Order ¶¶ 2, 4. The funds are to be invested in an account yielding the highest rate of interest, and are to be held there for the sole use and benefit

of A.C., until A.C.'s 18th birthday. *Id.* ¶¶ 4, 5. The Court finds that this arrangement will serve to "best protect the interest of the infant." Local Civil R. 83.2(a)(3); *see Doe v. Mattingly*, No. 06 Civ. 5761 (JBW), 2007 WL 2362888, at *2 (E.D.N.Y. Aug. 14, 2007) (approving settlement that included similar provision for investment and maintenance of the infant's funds).

### B. Attorneys' Fees

#### 1. Legal Standard for Assessing the Reasonableness of the Fee Award

Under New York Judiciary Law § 474, whether the amount of attorneys' fees requested as part of an infant compromise proceeding is appropriate turns on whether it is "suitable compensation for the attorney for his service . . . [on] behalf of the . . . infant." *Allstate Ins. Co. v. Williams*, No. 04 Civ. 4575 (CLP), 2006 WL 2711538, at *4 (E.D.N.Y. Sept. 21, 2006) (quoting *Werner v. Levine*, 276 N.Y.S.2d 269, 271 (Sup. Ct. Naussau Co. 1967)) (internal quotation marks omitted). "[T]he Court has an independent obligation to scrutinize the appropriateness of counsel's requested compensation, so as to protect the interests of the infant client." *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing Local Civil R. 83.2(a)(2)). Accordingly, contingency-fee agreements are to be treated by the Court as "advisory only," *id.*, and the contract between an infant's attorney and legal guardian is only "one of the elements which the judge may take into consideration in fixing reasonable compensation." *White v. DaimlerChrysler Corp.*, 871 N.Y.S.2d 170, 173 (2d Dep't 2008).

"The 'starting point' in analyzing whether claimed attorney's fees are appropriate . . . is not [the plaintiff's] fee agreement, but rather 'the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *D.J. ex rel. Roberts*, 2012 WL 5431034, at *6 (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "In determining a reasonable hourly rate for the lodestar calculation, the Court looks to 'hourly rates

prevailing in the district for similar services provided by attorneys with comparable skill and experience.'" *Abdell v. City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015) (quoting *Sprint Commc'ns Co. L.P. v. Chang*, No. 13 Civ. 3846 (RA), 2014 WL 6611484, at *6 (S.D.N.Y. Nov. 21, 2014)). "Other factors to be considered are: '(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney's experience, ability, and reputation, (3) the amount involved and the benefit flowing to the ward as a result of the attorney's services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved.'" *Orlandi*, 2011 WL 3874870, at *4 (quoting *In re Catherine K.*, 803 N.Y.S.2d 193, 194 (2d Dep't 2005)).

  2. **Analysis**

The Proposed Order provides for an attorneys' fee award of $16,406.92, which constitutes one-third of the total settlement award minus costs. Proposed Order ¶ 2; Harvis Decl. ¶ 5. The Court finds this award reasonable and appropriate.

First, while the contingency-fee arrangement between Campbell and Harvis is "advisory only," similar contingency awards of one-third of the plaintiff's recovery are common in § 1983 cases in this jurisdiction. *See Orlandi*, 2011 WL 3874870, at *5 (collecting cases); *Denes Q. v. Caesar*, No. 07 Civ. 1281 (CBA) (JO), 2009 WL 2877155 (E.D.N.Y. Sept. 8, 2009) (adopting report and recommendation); *Orlander*, 2013 WL 4400537, at *8 (one-third contingency fees are "usual and customary" and have been "routinely approved"); *Rodney v. City of New York*, No. 13 Civ. 6179 (RRM) (VMS), 2015 WL 1014165, at *6 (E.D.N.Y. Mar. 6, 2015) ("New York courts have generally approved payments that are one-third contingency arrangements in infant compromises.") (collecting cases) (adopting report and recommendation). And the proposed fee

9

award here is lower than an award of the lodestar, calculated by multiplying Harvis's hours worked by his hourly rate. In his submission to the Court, Harvis explains that, while his retainer agreement with Campbell set a $425 hourly rate for his legal services, the lodestar (reflected on the Invoice he prepared) was calculated based upon a $400 hourly rate. Harvis Letter, at 1. The Invoice indicates that Harvis spent 44.6 hours of work on this case (including 0.8 hours of administrative work, for which he bills $75 per hour), and that a paralegal spent 1.6 hours of work (billing at a rate of $75). Application of an hourly rate of $400 for Harvis's legal work yields a total of $17,700 in attorneys' fees. Harvis thus seeks slightly less than his lodestar.[1] *See Johnson v. City of New York*, No. 08 Civ. 3673 (KAM) (LB), 2010 WL 5818290, at *5 (E.D.N.Y. Dec. 13, 2010), *report and recommendation adopted as modified*, 2011 WL 613373 (E.D.N.Y. Feb. 11, 2011) (approving fee request where one-third contingency fee was below lead counsel's lodestar).

---

[1] The $400 hourly rate that Harvis claims has been held reasonable by courts approving fee awards in other civil rights lawsuits within this jurisdiction. "[C]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) (quoting *Lanzetta v. Florio's Enters., Inc.*, No. 08 Civ. 6181 (DC), 2011 WL 3209521, at *7 (S.D.N.Y. July 27, 2011) (collecting cases)) (internal quotation marks omitted); *see also Greene v. City of New York*, No. 12 Civ. 6427 (SAS), 2013 WL 5797121, at *3 (S.D.N.Y. Oct. 25, 2013) (same). A number of courts in this district have found an hourly rate of $400–$450 reasonable for law firm partners in civil rights actions. *See, e.g.*, *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 246 (S.D.N.Y. 2010) (hourly rate of $425); *Tatum v. City of New York*, No. 06 Civ. 4290 (PGG), 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010) (hourly rates of $400 and $425); *Simmonds v. New York City Dept. of Corr.*, No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16, 2008) (hourly rate of $400). Accordingly, the Court finds that a $400 hourly fee for Harvis, who has been practicing for nearly 10 years and has extensive experience, is appropriate. *See also Shebazz*, Dkt. 43, ¶ 10.

It is, further, apparent that Harvis devoted significant time to representing A.C. Harvis represents that he: (1) met with Campbell and A.C. and investigated their allegations, (2) facilitated A.C.'s pre-litigation § 50-H examination, (3) drafted and filed the complaint, (4) conducted document discovery and exchanged disclosures with defendants, (5) engaged in legal research concerning issues presented in the case, (6) engaged in settlement discussions, (7) drafted a pre-mediation statement, and (8) attended mediation. Harvis Decl. ¶ 13; Invoice. Finally, the Court finds that, for the reasons set forth in Harvis's Declaration, Harvis obtained a favorable settlement for A.C. in light of the surrounding circumstances. *See* Harvis Decl. ¶¶ 6–10 (counsel's reasons for recommending settlement). The Court, therefore, holds that the $16,406.92 fee award is "suitable compensation" for Harvis's work on behalf of A.C. *Allstate*, 2006 WL 2711538, at *4.

## CONCLUSION

Based on its review of the submissions by counsel for the infant and the infant's mother and guardian, the Court finds the proposed settlement of the claims by Campbell on behalf of her infant son, A.C., in the amount of $50,000, fair, reasonable, and proper. In addition, the Court grants Harvis's request for $16,406.92 in attorneys' fees and $779.24 in costs. The Court orders that the remaining $29,733.34—factoring in a deduction of $3,090 in satisfaction of a lien on plaintiff's assets—be deposited in an interest-bearing account in Banco Popular, located at 1046 Southern Boulevard, Bronx, New York. The account shall be in the name of Campbell and shall be held for the sole use and benefit of A.C. until he reaches the age of 18, except upon order of the Court. The bank shall, without further court order, pay over to A.C. all monies held in that account when he reaches age 18.

The Court will retain jurisdiction over this matter for the purposes of enforcing the infant compromise order and the terms of the underlying settlement, and hearing and determining applications for the release of funds under the infant compromise order.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 10, 2015
 New York, New York